*Bassett & Mitchell*, for plaintiffs.
*John T. Blodgett*, for defendant.

---

PETER LENNON *vs.* WILLIAM R. PARKER.

PROVIDENCE—APRIL 6, 1900.

PRESENT: Matteson, C. J., Stiness and Tilllinghast, JJ.

(1)  *Assignment of Wages.     Fraudulent Assignments.*

Where the assignee, under an assignment of wages made by the defendant and duly recorded, collected and paid over to the defendant all of the wages of the latter earned during the period of five months, at the rate of

$15 a week, less about $40, the transaction shows that the assignment was used merely as a cover for the defendant and renders it fraudulent as against attaching creditors whose claims antedate the assignment.

(2)    *Assignment of Wages.    Cancellation of Assignment.*

May 25, 1899, A. made an assignment of his wages to B. to May 1, 1900, which was duly recorded. October 25, 1899, A. made another assignment of his wages to B. for the term of one year, which was also recorded. The first assignment was not cancelled in writing nor of record : —

*Held,* that upon the facts proved, although the first assignment was doubtless void as to attaching creditors, it was nevertheless good as between the parties, and conveyed the wages of A. to B. so long as it remained in force.

As the first assignment was never cancelled nor discharged, there was nothing for the second to operate upon at the time it was made. and hence it did not place the wages of A. beyond the reach of an attachment.

(3)    *Assignment of Wages.    Fraudulent Assignments.    Preferences.*

While a debtor has the right under the laws of this State, outside of the insolvency law (which is now held in abeyance by the national bankruptcy law, so far as the latter can be invoked), to assign his wages to prefer some one of his creditors, he cannot under the guise of such an assignment secure his wages to his own use, such act being in fraud of his other creditors.

ASSUMPSIT ON BOOK ACCOUNT. The facts are fully stated in the opinion. Heard on exception to ruling of District Court refusing to charge a garnishee. Exception sustained.

TILLINGHAST, J. The bill of exceptions shows that on October 31, 1899, the plaintiff commenced this action against the defendant, the writ being served by garnishee process on the city of Pawtucket, and that the garnishee's affidavit disclosed funds in its hands which had been earned by defendant, but which were claimed by C. D. Ramo under an assignment.

The facts which are made to appear regarding the assignment are as follows :

On May 25, 1899, the defendant being indebted to said Ramo in about the sum of $400, made an assignment to him of his (defendant's) wages to May 1, 1900, which assignment was duly recorded. Subsequent to the making of said assignment Ramo collected the defendant's wages as they became due, and applied about $40 thereof toward said indebtedness and turned over the balance to the defendant. October 25, 1899,

the defendant made another assignment of his wages to Ramo for the term of one year, which was also duly recorded. At the date of this assignment defendant was still indebted to Ramo in about the sum of $400. Ramo testified that he got the second assignment because he understood the first one was "no good," and that he cancelled the first one before the second was made. No cancellation of said first assignment was made in writing, however, nor was any made of record. The debt upon which the judgment in this case was rendered was due and owing to plaintiff prior to May 1, 1899.

Upon these facts the plaintiff requested the District Court of the Tenth Judicial District to charge the garnishee, a judgment against the defendant having been first obtained ; but the court refused so to do, and entered an order discharging the garnishee, to which ruling the plaintiff duly excepted.

The only question before us, therefore, is whether said ruling was correct.

(1)    We think it is evident from the facts which are thus made to appear, taken in connection with what appears in the record, that the transactions between the defendant and Ramo were had primarily for the purpose of enabling the defendant to secure his wages from attachment for his debts, and secondarily to secure the payment of Ramo's claim. The fact that Ramo collected and paid over to the defendant all of the wages of the latter earned between the date of the first assignment and the date of the second—five months— less about $40, shows clearly enough to our minds that the first assignment was used merely as a cover for the defendant. He was earning, according to the disclosures of the garnishee, $15 per week, which would amount, in five months, to upwards of $300. So that, notwithstanding it appeared of record that all of said wages belonged to the assignee, and that in fact they were collected by him, yet by virtue of some arrangement between them he was simply the agent of the defendant to collect and turn over the same to him, the agent or nominal assignee being allowed to retain a small

part thereof towards the payment of his claim. In this way the defendant's wages could be apparently tied up indefinitely, while, in fact, he would be regularly in receipt of the principal part thereof to his own use.

Such a scheme is so clearly fraudulent as against attaching creditors whose claims antedate the so-called assignment that we cannot give it the sanction of this court. It is sim-(3) ply a device to hinder and delay creditors. That a debtor has the right to make an assignment of his wages to secure the payment of some one of his creditors in preference to others is doubtless true, so far as the law of this State is concerned, outside of the insolvency law—which is now held in abeyance by the national bankruptcy law—but to attempt under the guise of such an assignment to secure one's wages to his own use is a fraud upon his other creditors. It is seeming to do a legal and honest thing, but in fact doing an illegal and dishonest thing.

(2) So far as the making of the second assignment is concerned, we do not see that it alters the case at all. Ramo says he cancelled the first one, and then had the second one made. But the only cancellation shown is that which would result from simply making another assignment. There was nothing written regarding it, either on the assignment itself or separately, nor was it discharged of record; and moreover, so far as the evidence shows, it was not even returned to the defendant. In these circumstances we fail to see how its effect as an assignment as between the parties thereto was affected. Ramo says that he learned that the first assignment was "no good," and hence had the second one made. By this expression we understand from counsel that Ramo meant that by reason of the understanding between him and the defendant, whereby the latter was to receive and did receive the principal part of his wages, the assignment was rendered void as to attaching creditors, as it doubtless was. *Robinson* v. *McKenna,* 21 R. I. 117. But as it was nevertheless good as between the parties, it had the effect to convey the defendant's wages to Ramo so long as it remained

in force.    And, as the evidence fails to show that said first assignment was ever in fact cancelled or discharged, there was nothing for the second one to operate upon at the time it was made, and hence the making of it did not have the effect of placing defendant's wages beyond the reach of the plaintiff's attachment.

Exceptions sustained, and case remitted to District Court with direction to charge the garnishee.

*Claude J. Farnsworth*, for plaintiff.

*Thomas W. Robinson*, for defendant.